BECKER, Circuit Judge,

Statement Sur Denial of the Petition for Rehearing.

The majority opinion’s interpretation of the Supreme Court’s decision in Eastman Kodak Co. v. Image Technical Servs., Inc., 504 U.S. 451, 112 S.Ct. 2072, 119 L.Ed.2d 265 (1992) has serious consequences for our future examination of franchisor/franchisee relationships in the context of the antitrust laws. The majority states that
Kodak does not hold that the existence of Information and switching costs alone, such as those faced by the Domino’s franchisees, renders an otherwise invalid relevant market valid.
Queen City Pizza, Inc., - et al. v. Domino’s Pizza, Inc., 124 F.3d 430, 439. Instead the majority believes that the ratio decidendi of the Kodak case is that the aftermarket commodity or service alleged to constitute a single brand market must be unique. 124 F.3d at 439-40. When this view is combined with the majority’s further holding that uniqueness must come from the nature of the product, not the franchise agreement, 124 F.3d at 435-36, the result is that the franehisor/fran-chisee relationship is rendered virtually immune from antitrust scrutiny.
Judge Lay’s splendid dissenting opinion fully exposes the flaws in the majority’s relevant product market analysis, and I need not labor the point. I do, however, write separately to elucidate a concern about the majority’s approach to antitrust policy in the franchising area that Judge Lay discusses only briefly, 124 F.3d at 444-45, but which also strongly counsels that this case be heard en banc.
I have long believed that “The way you come out In [a] case depends on how you go in.” See Larry Muko, Inc. v. Southwestern Pa. Bldg. & Constr. Trades Council, 609 F.2d 1368, 1377 (3d Cir.1979)(Aldisert, J., dissenting). The majority’s holdings stem, I believe, from how It has gone Into the case, i.e. from the fact that the majority has bought into the oft-heard paeans of praise for franchising:
Franchising is a bedrock of the American economy. More than one third of all dollars spent In retailing transactions in the United States are paid to franchise outlets. We do not believe the antitrust laws were designed to erect a serious barrier to this form of business organization.
Queen City Pizza, Inc., et al v. Domino’s Pizza, Inc., 124 F.3d at 441. It also has endorsed the questionable theory that the kind of tying arrangements involved here “are an essential and important aspect of the *726 franchise form of business organization.” Id. But these theories are also flawed.
I believe that the approach endorsed by the majority might have been acceptable two decades ago, see Ungar v. Dunkin’ Donuts, 531 F.2d 1211 (3d Cir.1976), when franchising was In Its nascent, or at léast’ its growing stage. But now the food franchisors are leviathans, and I am underwhelmed by the suggestion that they may be permitted with impunity to perpetuate the type of arrangements pled in the complaint. These arrangements are clearly quite onerous to the average franchisee, a relatively small business person whose sunk costs In the franchise represent all or most of his or her assets and who lacks the considerable resources necessary to switch or defranchise. Moreover, the amount of commerce that the franchisors are foreclosing in the tied product market — for the pizza sauce, flour and other supplies (for which non-franchisor dominated suppliers, be they individual firms or a franchise cooperative, could easily meet quality control specifications) is enormous.
Additionally, to the extent that the plaintiffs have alleged coercion In connection with them acceptance of a burdensome tie, a Rule 12(b)(6) dismissal would be inconsistent with Ungar. Indeed, even if the majority’s legal position is correct, it can only be sustained if It were an affirmance of a summary judgment on a full record, which is how the opinion seems to read. It can not stand under its actual procedural status — review of a Rule 12(b)(6) dismissal.
For all the foregoing reasons, I dissent from the denial of rehearing en banc.